## OYSTER, Admr. v KUHN

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3251. Decided Oct. 4, 1940

Thomas H. Clark, Columbus, for plaintiff-appellee.

Hamilton & Kramer, Columbus, for defendant-appellant.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The action was one for wrongful death, for the benefit of the next of kin. It might also be said at this time that the deceased was a guest passenger in the automobile owned and operated by the defendant, and thereby §6308-6, generally known as the guest statute, was involved.

The verdict and judgment were for the plaintiff in the sum of $2000.00.

All the necessary steps were taken by which the case was lodged in this Court for determination on error. Defendant's answer, filed by guardian ad litem, was a general denial of all the actionable allegations of the petition.

Plaintiff's amended petition upon which the case was tried sets out the following actionable conduct of the defendant which it is claimed supports wanton misconduct:

"Plaintiff says that the death of Frederick W. Oyster was caused as follows: at or near the intersection of the road leading to the Columbus Airport and East Broad Street, on the date above mentioned, Overton Kuhn was driving his car, in which Frederick W. Oyster was a passenger, westwardly at a speed of between sixty and seventy miles per hour; that said road was a bituminous macadam and, when wet, was very slippery; that at said time and place it was raining hard and had been raining for some time preceding the accident hereinafter described; that the traffic on said road was heavy and that the visibility was poor; that under said conditions, without lowering his speed, defendant passed to the left of the car immediately in front of him on the right hand or north lane of traffic; also passed another car abreast of the car in the north lane of traffic, which car was in the center lane and which car was attempting to pass the car in the north lane, and passed entirely over to the left or south lane of traffic; that when he reached the south lane of traffic he was suddenly confronted by an automobile going east in said south lane of traffic and confronting said automobile, lost control of the car which he was driving, skidded entirely across the road and across the berm, which was six feet in width, striking a deep ditch on the north side of the road, turning his car over completely, crushing the chest of Frederick W. Oyster, crushing and bruising his head, causing a concussion of the brain, from which injuries he died in a few minutes thereafter."

"Plaintiff says further that Overton Kuhn knew of the dangerous and slippery condition of the road; knew of the poor visibility owing to heavy rains, and that in driving at this high rate of speed and swinging over to the south lane of traffic he would in all probability injure and damage his passengers, of whom Frederick W. Oyster was one."

We now review the evidence which in any way, either directly or inferentially, supports the allegations of the petition.

On the morning of the 5th day of November, 1937, at approximately 10:00 o'clock, the defendant, Overton Kuhn, who was a student in Dennison University, left Granville in his Ford V-8 automobile, with four other students, for Columbus to attend the funeral of the father of a fraternity brother of

the five boys. Two of the boys were in the front seat with the defendant, and the other two, including plaintiff's decedent, were in the rumble seat. They had traveled a distance of some twenty-five or twenty-seven miles when the accident happened, at or near 10:45 A. M. The trip was uneventful up to the time of the accident. It was raining but not a hard rain. At the time of and immediately before the accident it was raining lightly, in some instances described as a mist. The pavement was wet. Defendant's car was comparatively new, having been purchased in the previous June of the same year. From Granville to the scene of the accident defendant's driving speed was approximately thirty-five to forty miles per hour. No evidence was presented as to the amount of traffic on the highway, except as defendant approached the crossroad leading to the Columbus Airport (which was near the scene of the accident) two vehicles were in front of defendant, traveling westwardly in the same direction in which defendant was moving. One was a truck and behind it, an old car. These two cars were moving at a speed of approximately twenty-five miles per hour. Defendant caught up with them just after he had crossed the Airport crossroad and proceeded to pass. At the scene of the accident East Broad Street was marked off into three lanes, although when defendant started to pass there were only markings for two lanes. The driver of the old car, which was behind the truck, testified that he started around the truck and as he was proceeding to go around, the defendant pulled up to his left and went around both the truck and his car. The speed at which the defendant was driving at the time he passed the car and truck was variously estimated by all witnesses who saw the accident and testified, as from forty-five to fifty miles per hour. Dr. Smith, the Coroner, was called as a witness and testified that following the inquest which he made, he interrogated the defendant and at that time the defendant stated that he was driving at the time of the accident between sixty and sixty-five

miles per hour. The defendant and one of the boys who was a passenger with him at the time of the accident testified that when they started around the old car and truck, the former had not started to pass, but when they were about even with it, it did pull over slightly, causing the defendant to also pull over, but there was no evidence, either directly or from inference, that this incident had anything to do with the subsequent accident.

At this same time a Mr. Bernard S. Norse (witness for plaintiff) was approaching the scene of the accident from the west. He was driving east in his truck, and of course in the opposite direction from which the three cars heretofore referred to were moving. Mr. Morse says that when defendant started around the truck there was about 700 feet beween his car and the truck. He says that defendant came around the truck all right, and in the intervening time he estimates that the distance was cut down to probably 150 to 200 feet. Mr. Morse corroborates the defendant and defendant's passenger when he testifies that the old car which was behind the truck did not drive around the truck, although he saw it nose out and then pull back. The defendant's Ford car, after it had passed the truck and pulled back to about the center lane, suddenly and unexpectedly took a skid, very quickly taking a position diagonal to the line of traffic and then proceeding in a northerly direction over the berm and into the ditch where it overturned inflicting fatal injuries on the plaintiff's decedent and also injuring the other passengers including defendant, except one. Aside from plaintiff's decedent, none of the other boys was seriously hurt. One was thrown clear of the car landing on his feet and was uninjured.

Two of the passengers in the defendant's car were not called, but it was explained that both had been present a week or so previous when the case was set down for trial, but when not heard at that time, were compelled to leave for their respective work at distant points.

Evidence, very important, and having a bearing on the cause of the accident is found in the record. Witness Morse, heretofore referred to as the person who was traveling eastwardly and facing the accident, testified that a short stretch of road immediately west of the Airport highway crossing where the accident happened, was very dangerous and slippery when wet. He described it as the worst road in the State of Ohio, and that he had traveled over about all of them. He was connected with road building. He gave testimony that a car on this section of the road would skid very easily, and that the wheels would frequently spin from merely stepping on the accelerator.

Mr. James M. Feustel was also called as a witness. He is a resident of Columbus, Ohio, and is Superintendent of Maintenance in Franklin County with the State Highway Department. He had been connected with the Highway Department since 1917. He says that the roadway at the scene of the accident during 1936 and 1937 was and still is very slippery. He gives as the cause that there was too much bituminous material placed there when the road was built, causing it to bleed. He explained that this term means that the bituminous material oozes out and then is very slippery when wet; that the method of correcting that they had been using was every three or four months they would place screenings of stone or gravel on top of the surface in order to roughen it up; that this treatment had not been renewed for several months.

Testimony was also presented that this extra slippery condition covered a distance of about a thousand feet. This unusual condition did not exist east of the intersecting road.

There is no evidence that defendant knew of this extraordinary slippery condition. On the contrary, there is evidence that he did not know of it. Of course it is a matter of common knowledge that any pavement is more or less slippery when wet, and, probably is well known that bituminous pavements, particularly old ones, are more slippery than hard surface roads of other material.

There was also presented in evidence on behalf of plaintiff alleged statements of defendant made following the accident; one made to a relative of the deceased boy in Columbus, and the other to the mother of the deceased boy in West Virginia on the day of the funeral. Those statements in substance credited the boy with saying that he was very sorry and that he wished he might have received the fatal injury rather than plaintiff's decedent, and further, that he did not know why he was driving so fast and recklessly. The defendant denied having made these statements.

We think we have narrated practically all the evidence in substance which in any way bears on the issuable question.

Considering this evidence in the strongest light as supporting the verdict and judgment, we now come to the question as to whether or not a showing is made of wanton misconduct. We are constrained to the view that the verdict and judgment must be reversed.

The guest statute (§6308-6, GC) is comparatively new in Ohio, its effective date being June 15, 1933.

Since that time the courts of Ohio have had many occasions to construe and determine its scope; in fact so much has been said by the Supreme Court that we can see no useful purpose in attempting to write a thesis on this question. In arriving at our conclusion we have studied these cases very carefully and have sought to give application to the principle announced. It has been repeatedly held that negligence and wanton misconduct are independent, and that negligence, however gross, is not synonymous with wanton misconduct. In negligent actions the question of intentional wrongdoing is not involved. In common law actions it is based on conduct contrary to that of the ordinary individual under the same or similar circumstances; in statutory negligence it is the viola-

tion of some statutory negligence enacted for the safety of the public.

Wanton misconduct is defined in the case of **U. C. Pipe Company v Bassett, 130 Oh St 568**, syllabus 2:

"2. Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (**Higbee Co. v Jackson, 101 Oh St 75**, 3rd paragraph of the syllabus; and **Reserve Trucking Co. v Fairchild, 128 Oh St 519**, 2nd paragraph of the syllabus.)"

We have also examined the following other Supreme Court cases:

**Vecchio v Vecchio, 131 Oh St 59.**

**Morrow v Hume, Admr., 131 Oh St 319.**

**Ackers v Stirn, 136 Oh St 245;** (Oh Bar Rep. of Feb. 5, 1940).

**Reserve Trucking Co. v Fairchild, 128 Oh St 519.**

**Industrial Commission v Roth, 98 Oh St 34.**

We have also examined the following reported cases of the various Ohio Courts of Appeals:

**Murphy v Snyder, 29 Abs 59.**

**Levine v McFarlin, 53 Oh Ap 304.**

**Fisher v Faflik, 52 Oh Ap 69.**

**Thomas v Foody, 54 Oh Ap 423.**

**Ernest v Bellville, 53 Oh Ap 110.**

**Kirk v Birkenbach, 22 Abs 569.**

**Cousins v Bookshaum, 51 Oh Ap 150.**

In the light of all the reported cases and the evidence considered in its most favorable light in support of the verdict and judgment, we are unable to find any evidence of wanton misconduct. This is really determinative of the case, and requires us to enter final judgment in favor of the defendant. However, we are required under the law to pass on all alleged errors and for that reason and that reason only we briefly consider other claimed errors.

Counsel for defendant submitted in writing and requested the trial court to submit two special findings of fact in the event of a general verdict, to be answered by the jury as follows:

"1. Was the defendant, Overton Kuhn, at or immediately prior to the accident, guilty of wanton misconduct?

2. If your answer to question 1 is yes, of what acts or omissions of defendant did such misconduct consist?"

The trial court refused to submit these two special findings. The authorization for submission of special findings is found in §11420-17 GC. In support of the claimed error, we are referred to **Cleveland Ry. Co. v Hawkins, 64 Oh St 391,** wherein is found the following:

"The court is accordingly required, if it be requested, to propound such questions as will elicit special findings upon questions of fact which are legally involved in and determined by the general verdict. This will extend the inquiry to every fact which is of such legal import that, when considered in connection with other facts, admitted or to be found, it may show that the general verdict results from an erroneous application of the law."

Also the case of **Gale v Priddy, 66 Oh St 400,** wherein we find the following announcement:

"The questions must be such that the answers thereto will establish ultimate and determinative facts, and not such as are only of a probative character; yet this should not be construed to exclude questions, answers to which will establish probative facts from which an ultimate material fact may be inferred as a matter of law."

Also the case of **Davidson v Flowers, 123 Oh St 89.** This was an action for alleged negligence. Two alleged acts of negligence were set out in the petition. Two interrogatories were submitted, the first of which was given and the second, refused. These special requests were as follows:

"1. Was Albert Davidson, the defendant, negligent?

2. If your answer to defendant's request No. 1 was yes, state of what that negligence consisted."

The jury answered interrogatory No. 1, "Yes". The Supreme Court held that the trial court committed error in not submitting special request No. 2. As we view it, this case is determinative of the question in the instant case and for that reason we must ▮▮▮▮▮ hold that the trial court was in error in not submitting these special requests.

It is also urged that the trial court erred in overruling defendant's general demurrer to the amended petition. While not free from doubt, we do not support this ground of error.

The claim is also made that the judgment in addition to being contrary to law is excessive; and that the verdict appears to have been the result of passion and prejudice. We have heretofore determined that the verdict and judgment is contrary to law and therefore it would be unnecessary to give any extended study to the question of excessiveness of verdict or that the same was the result of passion and prejudice. It is very doubtful if we would disturb the amount of the verdict if we could find that plaintiff was entitled to recover at all. It is true that evidence supporting beneficiary's monetary loss was not present, of any appreciable amount, yet actions for wanton misconduct if properly sustained, authorize the allowance of punitive damages.

Further claim is made that the Court erred in admitting evidence. The Court before submitting to the jury, came to the conclusion that he had improperly ▮▮▮▮▮ admitted evidence touching certain matters, and withdrew these from the consideration of the jury and we think thereby cured the error. Counsel for defendant argue that notwithstanding that this evidence was withdrawn, the sting and effect would still remain, and therefore its admission was prejudicial. In many cases reviewing courts

have so determined. Such ruling is not universal. It depends upon the facts and circumstances in each case. We find no error in this particular.

As heretofore indicated, the judgment of the trial court is reversed, and coming now to enter the judgment that should have been entered in the trial below, judgment will be entered for the defendant and costs adjudged against the plaintiff.

HORNBECK, PJ. & GEIGER, J., concur.